FILED & JUDGMENT ENTERED
Steven T. Salata

February  15  2017

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT HAVE NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | Jointly Administered: |
| DESIGNLINE CORPORATION, debtor ) | Case No. 13-31943 |
| ) | Chapter 11 |
| In Re: ) | |
| ) | |
| DESIGNLINE USA, LLC, debtor ) | Case No. 13-31944 |
| ) | Chapter 11 |
| ELAINE T. RUDISILL, as Liquidating ) | |
| Trustee, plaintiff ) | |
| ) | Adversary Proceeding |
| v. ) | No. 15-03139 |
| ) | |
| DR. LINDA M. COMBS, JOSEPH M. ) | |
| COX, JAMES G. MARTIN, BILL R. ) | |
| TILLET, DARREN C. WALLIS  and ) | |
| EDWARD I. WEISIGER, defendants. ) | |
| ) | |
| ) | |

**RECOMMENDED ORDER GRANTING THIRD-PARTY
DEFENDANT'S MOTION TO DISMISS**

In this matter, General Arnold L. Punaro seeks dismissal of third-party claims for indemnification and contribution stemming from his role as a director of the DesignLine Corporation.  Bankruptcy subject matter jurisdiction is lacking over the claims against Punaro. The United States District Court would appear to possess subject matter jurisdiction over these claims under 28 U.S.C. § 1367; conceivably, this bankruptcy court may as well.  However, the

1

undersigned declines to exercise any such power and would recommend that the District Court decline to do so as well. It is recommended that the third-party complaints be dismissed.[1]

## Background and Procedural History

The claims against Punaro represent the latest volley in the ever-growing litigation flowing from the DesignLine bankruptcy. This decision requires consideration of not only the substantive claims asserted against Punaro but of the overall scope and context of the related adversary proceedings. Those proceedings are the subject of numerous orders from this bankruptcy court and will be summarized as necessary below.

Approximately ten years ago, DesignLine and related entities began operations and preparations to build hybrid buses in Charlotte, North Carolina. The venture was not successful and ultimately culminated in a bankruptcy filing in Delaware in August 2013. An unsecured creditors committee (the Committee) was formed with Punaro as the chair of the Committee. The Delaware Bankruptcy Court transferred venue of the case to this Court in September 2013.

Thereafter, the Committee, represented by Benesch, Friedlander, Coplan & Aronoff, LLP and Moon Wright & Houston, PLLC (together, the firms), proposed a liquidating Chapter 11 Plan. On March 17, 2014, this Court confirmed the Committee's Plan wherein DesignLine's assets, consisting primarily of un-asserted causes of action, were transferred to a trust. Elaine Rudisill was appointed liquidating trustee. She retained the firms to assist her in liquidating the trust assets.

Since the effective date of the Plan, the trustee has initiated approximately 115 adversary proceedings. Only a handful remain unresolved. The remaining adversary proceedings relevant

---

[1] As described below, many of the claims asserted herein appear to be "related to" proceedings under 28 USC § 157 or "Stern core" matters. Universal consent to final adjudication in bankruptcy court is lacking. Thus, the dismissal of the third-party claims is recommended to the United States District Court as opposed to being made by a final order of this bankruptcy court.

2

to Punaro's motion involve claims asserted against some, but not all, of the officers and directors of the DesignLine companies.

During DesignLine's brief lifetime, in addition to Punaro, various individuals served as officers and/or directors including Buster and Brad Glosson, Eyad and Fouad Alaeddin, Michael Floyd, Daniel Keating, Michael Burns, Linda Combs, Joseph Cox, James Martin, Bill Tillett, Darren Wallis, and Edward Weisiger. With the exception of Punaro, the trustee has sued all of these former officers/directors in interrelated adversary proceedings.

The action against the Glossons, *et al*. (the Glosson Defendants), Adv. Pro. 15-3138 (the Glosson Action), drives the trustee's claims against many of the other defendants. In that adversary proceeding, the trustee's 131 separate causes of action range from claims of breach of fiduciary duty and unjust enrichment to bribery and RICO violations. She accuses the Glosson Defendants of working in concert for years to pilfer assets, and usurp opportunities, of the debtors for their personal benefit. In no less than 1003 numbered paragraphs, the trustee outlines how, in her opinion, the Glosson Defendants defrauded the debtors (including their creditors and equity investors), converted funds designated for the debtors' businesses, and diverted millions of dollars of the debtors' business opportunities to themselves.

In the current adversary proceeding, a companion proceeding to the Glosson Action, the trustee brings claims against Linda Combs, Joseph Cox, James Martin, Bill Tillett, Darren Wallis, and Edward Weisiger (the Third-Party Plaintiffs). Here, the trustee accuses the Third-Party Plaintiffs of breaches of fiduciary duty in that they allegedly permitted the Glosson Defendants to pilfer the debtors' assets and business opportunities (the Director Actions).

As for Punaro, he and the trustee have entered into a tolling agreement whereby Punaro's claim in the case was allowed and the statute of limitations on any claims against Punaro by the

3

trustee were tolled through December 31, 2016. Additionally, Punaro agreed to cooperate and assist the trustee in prosecuting her actions. The consent order approving the agreement further provides that "each of [the Third-Party Plaintiffs'] rights under Delaware law with respect to the effect of the Tolling and Cooperation Agreement are preserved." At this point, the trustee has chosen not to bring an action against Punaro.

This Court has previously described the scope of the trustee's allegations in these adversary proceedings as breathtaking. The Glosson Action seeks a recovery against eighteen different defendants who reside all across the globe. Most of the defendants have requested that these claims be resolved in United States District Court by juries. A motion to withdraw the reference of the Glosson Action is currently pending in United States District Court (3:16-cv-00609-RJC). Such trials would likely take weeks to conclude.

With discovery barely underway, the cost of this litigation is already monumental. The primary defendants have been able to fund their defense efforts by using proceeds from insurance policies purchased by the debtors—commonly referred to as D&O Policies—that have limits in the millions of dollars. Lacking the funds to fully prosecute these actions, the trustee sought to sell a portion of the proceeds of the actions in exchange for litigation funding. Her request was denied because her proposal constituted champerty under North Carolina law. The "buyer" recently appealed that order to United States District Court (3:17-cv-00048-GCM).

Further entangling the proceedings, the Third-Party Plaintiffs have now filed third-party complaints against the Glosson Defendants and Punaro. According to the Third-Party Plaintiffs, if they are liable for any failure in oversight, every DesignLine director, including Punaro, is liable either under a theory of indemnification or for contribution. The Glosson Defendants

4

answered the third-party complaints and have requested jury trials. Punaro filed a motion to dismiss, which is the subject of this order.

### Parties' Positions

Punaro argues that the complaints against him should be dismissed because: (1) this Court lacks subject matter jurisdiction in that the third-party actions have no conceivable effect on the bankruptcy estate; (2) under North Carolina law, indemnity and contribution are not available between directors for breach of fiduciary duty to a corporation; and (3) the complaints fail to meet the pleading standards set out in *Iqbal* and *Twombly*.

Relying on Delaware law, the Third-Party Plaintiffs assert that they must bring Punaro into this fray else they lose their rights to offset any recovery made by the trustee. Because Punaro's jurisdictional argument was not asserted until his sur-reply brief, the Third-Party Plaintiffs did not brief that particular issue. At the hearing on this matter, they contended that the claims against Punaro would have an attenuated effect on the estate. In any event, no one has requested an additional opportunity to brief the issue and all appear to be content on a ruling without further argument.

We need only address the subject matter jurisdiction issue.

### Analysis

I. Bankruptcy Jurisdiction is Lacking.

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Title 28 U.S.C. § 1334(b) defines bankruptcy jurisdiction and provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings" arising under, arising in, or related to cases under the Bankruptcy Code. That bankruptcy jurisdiction is exercised by bankruptcy

5

courts pursuant to reference orders. For clarity, in this order, 28 U.S.C. § 1334 jurisdiction will be termed "bankruptcy jurisdiction" irrespective of which court exercises it.

The distinctions between arising under and arising in proceedings can be summarized as follows. "A proceeding is one 'arising under' Title 11 when it invokes a 'substantive right created by the Bankruptcy Code.'" *In re Tate*, 253 B.R. 653, 661-62 (Bankr. W.D.N.C. 2000) (citations omitted). "Proceedings 'arising in' Title 11 cases are those which are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy" such as "administrative matters, orders to turn over estate property, determination of the extent or priority of liens, contempt matters, and actions to recover postpetition accounts." *Id*. at 662 (citations and quotation marks omitted).

The Bankruptcy Code does not expressly provide a cause of action for either indemnity or contribution, and "[a]ny such cause of action arising under the Code would have to be implied." Edward M. Fox & James Gadsden, *Rights of Indemnification and Contribution Among Persons Liable for Fraudulent Conveyances*, 23 Seton Hall L. Rev. 1600, 1603 (1993) [hereinafter Fox & Gadsden]. Courts have generally declined to find an implied right to indemnity or contribution under the Code. *E.g., Walker v. Cadle Co.(In re Walker)*, 51 F.3d 562, 566-67 (5th Cir. 1995) ("We, as other courts examining this issue, agree, and, consequently, we find no implied right of contribution in the Bankruptcy Code." (citing *Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 168 (N.D. Ill. 1990)); *Barber v. Riverside Int'l Trucks, Inc. (In re Pearson)*, 142 B.R. 831, 848 (Bankr. C.D. Ill. 1992); *Neill v. Borreson (In re John Peterson Motors)*, 56 B.R. 588, 591 n. 5 (Bankr. D. Minn. 1986)); Fox & Gadsden, at 1602-03.

Thus, the third-party claims for indemnity and contribution are not based on any right created by the Bankruptcy Code so as to be "arising under" proceedings. Moreover, such claims

6

are not "arising in" proceedings, as they could exist outside of the bankruptcy. Therefore, for bankruptcy jurisdiction to exist under section 1334, the litigation must be undergirded by the power to adjudicate "related to" proceedings.

"In this circuit, a civil case is related to bankruptcy if 'the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000) (citations omitted). "[A] related to case need not necessarily be against the debtor or his property." *Id.* However, the jurisdiction to adjudicate related to proceedings is not limitless. *Celotex*, 514 U.S. at 308 (citing, inter alia, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). "[T]he 'mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of [§ 1334(b)].'" *New Horizon*, 231 F.3d at 151 (quoting *Pacor*, 743 F.2d at 994).

"As several courts have observed, a vast majority of cases find that related to jurisdiction is lacking in connection with third-party complaints." *Walker*, 51 F.3d at 569 (citations and quotation marks omitted); *Official Comm. Of Unsecured Creditors on Behalf of Summit Airlines v. Ganz* (*In re Summit Airlines, Inc.)*, 160 B.R. 911, 922 (Bankr. E.D. Pa. 1993) ("In assessing whether the third-party complaint in issue has an 'effect upon' the Debtor's bankruptcy, this court has reviewed numerous cases which applied this test in connection with third-party complaints. A review of such cases reveals that a vast majority of the cases find that 'related to' jurisdiction is lacking in connection with third-party complaints, and those that do not are factually distinguishable." (citations omitted)). More specifically, "indemnity or contribution claims made by those who are sued by representatives of the bankruptcy estate against third

parties generally fall outside the scope of bankruptcy court jurisdiction." *SIPC v. Murphy (In re Selheimer & Co.)*, 319 B.R. 384, 389 (Bankr. E.D. Pa. 2005) (citation omitted).

Here, the Third-Party Plaintiffs' claims involve litigation between non-debtors, will not result in a recovery to the bankruptcy estate, cannot "alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively)," or affect "the handling and administration of the bankrupt estate." *New Horizon*, 231 F.3d at 151 (quoting *Celotex*, 514 U.S. at 308, n.6); *see also Walker*, 51 F.3d at 569 (noting "[i]t is difficult to imagine" that requiring a third-party to pay contribution to a defendant for violations of 11 U.S.C. § 362 "could somehow affect the estate"); *Official Creditors' Comm. of Prods. Liab. And Pers. Injury Claimants v. Int'l Ins. Co. (In re Pettibone Corp.)*, 135 B.R. 847, 850-51 (Bankr. N.D. Ill. 1992) (holding related to jurisdiction did not exist over third-party claims where "[t]he creditors and the Plan in the underlying bankruptcy procedure will remain unaffected" in "a dispute between two non-debtors which will merely determine which party will ultimately be responsible in the event that [the defendant] is found liable in the underlying Adversary actions."). Thus, bankruptcy jurisdiction does not exist over the third-party claims.

II. While Supplemental Jurisdiction May Exist, It Should not be Exercised in this Circumstance.

Lacking bankruptcy jurisdiction under 28 U.S.C. § 1334, the only colorable argument left for federal subject matter jurisdiction would be under the supplemental jurisdiction of the United States District Court. Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A

8

court's decision over whether a court exercises supplemental jurisdiction is discretionary. *Cooper v. BB Syndication Servs., Inc. (In re 222 S. Caldwell St., Ltd. P'ship)*, 409 B.R. 770, 786 (Bankr. W.D.N.C. 2009), amended (June 22, 2009) (citation omitted).

"The Fourth Circuit has not directly spoken to whether a bankruptcy court can exercise pendent jurisdiction and hear non-federal claims raised in a bankruptcy adversary proceeding." *Id*. A number of courts, including this one in *Cooper v. BB Syndication Services., Inc.*, have held that the referral of matters from the district courts to the bankruptcy courts under 28 U.S.C § 157(a) empower a bankruptcy court to exercise supplemental jurisdiction. *Id*. (citations omitted). However, that issue was generally uncontested in *Cooper*, which predated *Stern v. Marshall*, 564 U.S. 462 (2011). *Stern* has cast a great deal of uncertainty over an Article I bankruptcy court's power to adjudicate certain claims and enter final orders.

Much like this Court's decision in *In re Redf Marketing*, 536 B.R. 646 (Bankr. W.D.N.C. 2015), the ultimate question of whether bankruptcy courts can exercise Article III supplemental jurisdiction need not be reached as it is all but certain that *Stern* and its progeny require these cases be tried in United States District Court.[2] Meaning, the question posed should be whether the District Court, in its discretion, will exercise its power to hear these third-party claims. Undoubtedly, this bankruptcy court is no position to make that determination. But, given the lengthy fights in these interrelated actions over which the undersigned has already presided, it seems appropriate to make a recommendation to the District Court on this issue. I recommend that the District Court decline to exercise its supplemental jurisdiction.

---

[2] The various parties' motions to determine whether the proceedings are core or non-core have not yet been addressed on a claim-by-claim basis. However, no one would deny that the litigation includes a diverse mix of core, non-core, and unrelated claims. At some point, one court will have to handle all these matters at once, and multiple parties have not consented to a trial in bankruptcy court. Thus, it appears inevitable that any trial of these matters will be held in District Court.

When weighing whether to exercise supplemental jurisdiction, courts generally engage in a three-part inquiry. First, "the federal claim must be substantial." *Cooper*, 409 B.R. at 786 (citing *Dechert Price & Rhoads v. Direct Satellite Commc'ns (In re Direct Satellite Commc'ns)*, 91 B.R. 5, 6 (Bankr. E.D. Pa. 1988)). "Second, the pendent claim must derive from a common nucleus of operative fact, and must be of the sort normally triable in the same proceeding as the federal claim." *Id.* (citations and quotation marks omitted). "Finally, whether a court exercises pendent jurisdiction is discretionary and affected by weighing the elements of 'judicial economy, convenience, and fairness of litigants.'" *Id.* (citation omitted).

Here, the trustee brought her primary claims under 11 U.S.C. §§ 502, 544, 548, and 550. The claims are thus substantial federal claims. Assuming for a moment that the applicable state law—whether North Carolina or Delaware—permits indemnity and contribution for the primary claims, the primary and pendent claims would likely derive from a common nucleus of operative fact. Nonetheless, notions of judicial economy, convenience, and fairness to the parties weigh heavily against exercising supplemental jurisdiction. In all likelihood, attempting to adjudicate the third-party claims concurrently with the primary actions will result in more expense to an already cash-strapped bankruptcy estate and result in confusion when the exercise that may be all of for naught.

So far as the bankruptcy case is concerned, the trustee will be forced to take and respond to discovery and dispositive motions from yet another party, further reducing the funds available to creditors, the real parties in interest. The third-parties will wish to take discovery from one another. All will have to attend the same depositions and hearings if only out of caution. That added expense would be born even though there appears to be no interest in judicial economy that would be furthered by adding these third-party claims. As already discussed, the outcome of

the third-party litigation will have no bearing on the bankruptcy estate, the execution of the plan, or on the debtors' rights or liabilities. Cast in the light of the effect on the bankruptcy estate and the purposes of the Code, it is telling that very few bankruptcy courts have allowed this type of third-party practice to proceed.

The breadth of the parties' arguments and their inherently opposite interests pose a great risk of confusion at trial. On the one hand, the defendants of these adversary proceedings are united against the trustee in the broad scope of these interrelated actions; but, on the other hand, each defendant and each third-party defendant holds a diametrically opposed position in this particular adversary proceeding. Furthermore, the parties have demanded jury trials. Asking a panel of lay people to pass judgment on an action that is already this unwieldy is a daunting prospect. It will be nearly impossible to organize and marshal the parties and their arguments to present the issues in a coherent fashion. Adding Punaro and the inevitable questions of "whose side is he really on" tips the scale even farther.

This risk of greatly increasing the litigation costs to the bankruptcy estate while significantly complicating the issues for trial may be entirely needless. The third-party claims may not yet be ripe. If and until the trustee succeeds in the Glosson Action, a behemoth undertaking with an uncertain outcome, the primary claims in this adversary proceeding cannot be fully resolved. If the trustee then succeeds against the Third-Party Plaintiffs on a theory that they permitted the Glosson Defendants to loot the debtors, then, perhaps, the Third-Party Plaintiffs would have claims against Punaro. Forcing the trustee, creditors, and Punaro through the exercise and expense that would follow from allowing the third-party claims to continue appears to be unfair and contrary to the spirit and purpose of the Bankruptcy Code, especially when these claims may never be ripe.

Dismissal would not prejudice the Third-Party Plaintiffs if, in several years, the trustee succeeds against them as the consensual tolling agreement specifically preserves their rights under state law to proceed against Punaro. Accordingly, the undersigned recommends that the District Court decline to exercise its jurisdiction under 28 U.S.C. § 1367 and DISMISS the THIRD-PARTY COMPLAINTS AGAINST PUNARO WITHOUT PREJUDICE to the Third-Party Plaintiffs reasserting their claims at a later date.

**SO ORDERED.**

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court